UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

KEVIN PINNOCK,

Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

**MEMORANDUM & ORDER**
25-CV-04626 (HG)

**HECTOR GONZALEZ**, United States District Judge:

Plaintiff Kevin Pinnock seeks judicial review of the Commissioner of the Social Security Administration's ("SSA") final decision denying his application for disability insurance benefits. *See* ECF No. 1 (Complaint).[1] The Court assumes the parties' familiarity with the record and recounts it herein only as necessary to explain the basis for its decision. In this case, the Court has, as is required, "conduct[ed] a plenary review of the administrative record" in order to determine "whether the ALJ [Administrative Law Judge] applied the correct legal standards and whether the ALJ's determination is supported by substantial evidence." *Rucker v. Kijakazi*, 48 F.4th 86, 90–91 (2d Cir. 2022). In contrast to the "very deferential" standard of review applicable to evidentiary challenges, *see Schillo v. Kijakazi*, 31 F.4th 64, 74 (2d Cir. 2022), "[f]ailure to apply the correct legal standard constitutes reversible error, including, in certain circumstances, failure to adhere to the applicable regulations," *Kohler v. Astrue*, 546 F.3d 260,

[1] This action is Plaintiff's second appeal pursuant to 42 U.S.C. § 405. Plaintiff's first appeal resulted in remand due to the ALJ's improper application of the treating physician rule. *See Pinnock v. Comm'r of Soc. Sec.*, No. 22-cv-6858, 2024 WL 1308597 (E.D.NY. Mar. 27, 2024) ("*Pinnock I*").

265 (2d Cir. 2008). In this case, for the reasons set forth below, Plaintiff's motion, ECF No. 11, is GRANTED and Defendant's motion, ECF No. 13, is DENIED.

Because Plaintiff's claim was filed before March 27, 2017, the treating physician rule applies, which requires an ALJ give special evidentiary weight to the opinion of a treating physician. *See* 20 C.F.R. § 404.1527; *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 119 (2d Cir. 1998). Under the treating physician rule, an ALJ must first decide whether the medical opinion of a claimant's treating physician is entitled to "controlling weight," *i.e.*, if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record." *Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019); *see also* 20 C.F.R. § 404.1527(c)(2). If an ALJ finds that a treating physician's opinion does not meet this standard, she must evaluate: "(1) the frequen[cy], length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist" (the "*Burgess*" factors). *Estrella*, 925 F.3d at 95–96. An ALJ must give "good reasons" at both steps for the weight she gives a treating physician's opinion. *Id.* at 96. Remand is appropriate when an ALJ does not "comprehensively set forth reasons for the weight assigned to a treating physician's opinion." *Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004); *see also Duran v. Comm'r of Soc. Sec.*, 618 F. Supp. 3d 94, 102 (E.D.NY. 2022).

Plaintiff argues that the ALJ did not support her evaluation of the medical opinions of Plaintiff's treating physician, Dr. Dvorkina, and the non-examining physician, Dr. Fuchs, with substantial evidence in determining his residual functional capacity ("RFC"). ECF No. 11 at 1. Specifically, Plaintiff contends that the ALJ "did not adequately deal with the supportability, consistency, [and] other-factors factors," nor did the ALJ properly address the supposed

inconsistencies in Dr. Dvorkina's opinions. *See id.* at 8–11. Defendant argues, among other things, that the ALJ properly went through the required factors to evaluate Dr. Dvorkina's opinions, that supporting evidence and explanations supported the interpretation of Dr. Dvorkina's opinions, and that Dr. Dvorkina's opinions were internally inconsistent and inconsistent with the record. *See* ECF No. 13-1 at 27–31 (Defendant's Memorandum). After reviewing the record and the parties' submissions, the Court finds that the ALJ failed to provide "good reasons" for affording "less" weight to the opinion of Plaintiff's treating physician, Dr. Dvorkina. *See* ECF No. 9 at 827 (Administrative Record).[2] Although, on remand, the ALJ properly recited the *Burgess* factors, *see Johnson v. Kijakazi*, No. 20-cv-6763, 2021 WL 5087926, at *7 (S.D.N.Y. Nov. 1, 2021), the analysis regarding the weight given to Dr. Dvorkina is nevertheless inadequate. As a result, remand is once again warranted. *Estrella*, 925 F.3d at 96; *Halloran*, 362 F.3d at 33.

While an ALJ is "not obligated to accept every part of a doctor's opinion," "[t]he Court cannot conduct meaningful review of the Commissioner's decision where an ALJ's cursory statements and findings obscure the actual reasons that underpin the RFC assessment." *Long v. Berryhill*, No. 18-cv-1146, 2019 WL 1433077, at *3–4 (E.D.N.Y. Mar. 29, 2019). "[I]t is the ALJ's responsibility to build an accurate and logical bridge from the evidence to [her] conclusion to enable a meaningful review." *Ortiz v. Saul*, No. 19-cv-2316, 2020 WL 7699304, at *6 (E.D.N.Y. Dec. 28, 2020). The ALJ failed to do so.

As an initial matter, the ALJ failed to first "decide whether [Dr. Dvorkina's] opinion is entitled to controlling weight" by evaluating if it is "well-supported by medically acceptable

---

[2] Because this conclusion resolves the appeal, the Court need not reach the remaining arguments concerning Dr. Fuchs.

clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." *Estrella*, 925 F.3d at 95. Instead, she launched directly into the *Burgess* factors. This is an error. *See Finkelstein v. Comm'r of Soc. Sec.*, No. 20-cv-4047, 2022 WL 4649295, at *4 (E.D.N.Y. Sept. 29, 2022); *see also Wharton v. Berryhill*, No. 17-cv-1247, 2018 WL 5619961, at *15 (S.D.N.Y. Aug. 14, 2018), *report and recommendation adopted*, 2019 WL 1410745 (S.D.N.Y. Mar. 28, 2019).

In her discussion of Dr. Dvorkina's opinions, the ALJ first pointed to vagueness in Dr. Dvorkina's reports as reason for giving her opinions less weight:

> [S]ome of [Dr. Dvorkina's] findings, such as assigned percentages of "temporary impairment" or "occupational impairment," are vague and do not provide vocationally specific, function-by-function limitations. She also did not quantify some of her restrictions. For instance, she only noted limitations with bending, twisting, climbing, kneeling, but did not indicate if the claimant should never, frequently, or occasionally be doing these activities.

ECF No. 9 at 827. "The law is clear beyond cavil that where, as here, a treating physician's opinion is found by the ALJ to be vague or unclear, it is incumbent on the ALJ to recontact the treating physician for clarification of his or her opinion." *Isernia v. Colvin*, No. 14-cv-2528, 2015 WL 5567113, at *10 (E.D.N.Y. Sept. 22, 2015). But here, the ALJ failed to recontact Dr. Dvorkina for clarification. This constitutes error.

Next, the ALJ noted that "[Dr. Dvorkina] provided internally inconsistent restrictions, as she sometimes limited lifting to 10 pounds but then limited it to 15 or even 25 pounds on other occasions, and she would limit the claimant to light or sedentary work." ECF No. 9 at 827. Such a cursory characterization is misleading because the supposed inconsistencies spanned the course of nearly two years and reflected gradual improvements rather than erratic changes in Dr. Dvorkina's reports. *See id.* (in December of 2016 and January of 2017, Dr. Dvorkina found Plaintiff could lift up to 25 pounds; in March of 2017, she found Plaintiff could lift up to 10 to 15

pounds; in both September and November of 2017, she found Plaintiff could carry up to 10 pounds; and then in August of 2018, she found Plaintiff could lift up to 15 pounds); *see also Long*, 2019 WL 1433077, at *3-4; *Ortiz*, 2020 WL 7699304, at *6. However, periods of fluctuation like those seen here, within an overall course of stagnation or decline spanning nearly two years, do not amount to "inconsistency" and they are not a "good reason" for discounting Dr. Dvorkina's opinion. *See, e.g., Balodis v. Leavitt*, 704 F. Supp. 2d 255, 267 n.13 (E.D.N.Y. 2010) (alleged inconsistency in treating physician's opinions could be explained by gap in time between physician's examinations of plaintiff); *Richardson v. Barnhart*, 443 F. Supp. 2d 411, 421 (W.D.N.Y. 2006) (citing *Harris v. R.R. Ret. Bd.*, 948 F.2d 123, 127 (2d Cir. 1991)) ("[A] treating physician's change of opinion over time concerning the assessment of a patient's condition does not necessarily establish a fatal inconsistency.").[3]

Further, in her discussion of Dr. Dvorkina's conclusions and the evidence in the record, the ALJ erred by supplanting the reasoning of the treating physician with her own. She opined that:

> [W]hile her exams, which indicated low back and left shoulder pain and decreased movement, low back spasms, decreased grip strength and knee reflexes, and positive straight leg raise testing (Exs. 16F/1–7, 9, 12–13, 15–18, 21, 24, 27, 30, 32; 17F/5–8, 13–14, 20, 22–23, 27–28), generally support the need for some exertional and postural limitations, they do not indicate any abnormal sitting, standing, gait, or strength deficits on exams that would result in such severe restriction to sedentary work or to only sitting and standing for 1 hour at a time. Last, such severe restrictions are not consistent with the claimant's only minimal facet joint hypertrophy on his 2016 lumbar spine x-ray (Ex. 8F/3); some disc degeneration and bulging with only mild facet joint arthrosis on his lumbar spine

[3] Defendant argues that because "Dr. Dvorkina assessed Plaintiff was limited in using his upper extremities on January 2, 2017, eight days later, assessed no such limitations; six days later limitations in using his upper extremities were again assessed, but the following month the limitation was absent, only to return again in June 2017" that "[i]t was hardly irrational for the ALJ to have seen such variations as inconsistencies." ECF No. 13-1 at 30. While this may be true, it is well-settled that the Court may not accept "post hoc rationalizations for agency action" and the ALJ did not discuss this in her opinion. *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999).

> MRI from 2016 (Ex. 8F/1); normal gait, heel/toe walk, station, hand and finger dexterity, extremity strength and sensation, and no muscle atrophy or joint instability at his 2017 consultative exam (Ex. 1F); and conservative treatment of primarily medications, home exercise, chiropractic adjustments, and [physical therapy] with referrals for injections (Exs. 2F/13–22; 10F/13–20; 15F–17F; 21F–22F) without need for more invasive treatment, such as surgery. Thus, the undersigned gives these opinions less weight.

ECF No. 9 at 827. As an initial matter, Dr. Dvorkina's opinion may not be discounted merely because she recommended a conservative treatment regimen. *See Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir. 2008). But more importantly, an ALJ is "not qualified to assess a claimant's RFC on the basis of bare medical findings" and "may not substitute [her] own judgment for competent medical opinion." *Spivey v. Comm'r of Soc. Sec.*, 338 F. Supp. 3d 122, 126 (W.D.N.Y. 2018) (citing *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013)). Here, the ALJ does just that, reaching a conclusion about what the medical evidence showed based on her own expertise rather than deferring to the treating physician's opinion, or, at the very least, comparing the treating physician's opinions to those of other physicians. *See Burgess*, 537 F.2d at 128 (quoting *Halloran*, 362 F.3d at 32) ("Generally, 'the opinion of the treating physician is not afforded controlling weight where . . . the treating physician issued opinions that are not consistent with . . . the opinions of other medical experts.'"). As this Court stated in *Pinnock I*, "[i]t is true that an ALJ may craft an RFC without guidance from a medical opinion when the record contains sufficient evidence to permit [her] to render a common-sense RFC determination," but given the technical nature of the medical evidence in this case, "the ALJ needed medical expertise to interpret these complex findings and could not assess the RFC based on common sense." *Pinnock I*, 2024 WL 1308597, at *9. The ALJ here did exactly what the court in *Pinnock I* cautioned against, thereby committing further error, and warranting remand. *See Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000).

Accordingly, because the record reveals that the ALJ failed to properly apply the treating physician rule in her evaluation of Dr. Dvorkina's opinions, remand is warranted. *Halloran*, 362 F.3d at 33; *Duran*, 618 F. Supp. 3d at 102.

**CONCLUSION**

For the reasons set forth above, Plaintiff's motion for judgment on the pleadings, ECF No. 11, is GRANTED, and Defendant's motion, ECF No. 13, is DENIED. This case is remanded to the SSA for further proceedings consistent with this Order. The Clerk of Court is respectfully directed to enter judgment consistent with this decision and to close this case.

SO ORDERED.

*/s/ Hector Gonzalez*
HECTOR GONZALEZ
United States District Judge

Dated: Brooklyn, New York
September 29, 2026